JUSTICE RICE
dissenting in part.
¶46 I dissent from the Court’s first holding herein, regarding the easement grant.
¶47 The Court finds ambiguity in the easement document by comparing the grant language with the recital language, see ¶ 19, and resolves that ambiguity by applying general principles of contract law, including resort to extrinsic evidence. However, the Court fails to apply the statute which specifically controls this matter.
¶48 The application of recital and grant language within grant documents is governed by § 70-1-515, MCA, which provides as follows:
*177 70-1-515. Recitals-when resorted to. If the operative words of a grant are doubtful, recourse may be had to its recitals to assist the construction.
¶49 This statute subjugates a grant document’s recitals to the operative wording of the grant itself; the recitals and the grant do not stand on equal footing. The statute directs that recitals may be looked to only if the words of the grant are doubtful. Here, no doubt whatsoever emanates from the operative words of the grant: the easement was clearly granted over Section 27 only. Thus, the Court’s obligation here is to apply the governing statute and reach the conclusion which the statute requires us to reach-that the easement does not extend over Section 22, or any other property owned by the Dundases.
¶50 Instead, however, the Court looks past the clear language of the grant in favor of nebulous phrases within the recitals which refer to “the purpose” of the document as granting an easement “over and across the undersigned’s remaining lands,” and then embarks on a journey to determine, using extrinsic evidence, to which of the “remaining lands” the recitals are referring. Given that the Dundases own many other “remaining lands” in the surrounding area, the Court opens a Pandora’s Box of ambiguity that well illustrates both the purpose served by the statute and the Court’s ill-advised decision to discard it.
¶51 Further, the Court bends other of our principles to complete its journey. Citing Mularoni v. Bing, the Court claims that “[g]eneral principles of contract law apply in interpreting an easement by grant.” See ¶ 20. This is indeed true-i/'the grant is unclear and the meaning of the grant needs to be interpreted. See Mularoni, ¶ 32 (“In interpreting the meaning of an easement grant, contract principles apply.” (emphasis added)). The general contract principles offered by the Court are not applied when an easement’s grant language is crystal clear and requires no interpretation.
¶52 The Court then cites the general contract interpretations! principles which instruct that we will “not isolate certain phrases of the instrument,” but will “grasp the instrument by its four comers and in light of the entire instrument, ascertain the paramount and guiding intent of the parties.” See ¶ 22. However, instead of grasping the document, the Court releases it, particularly the clear language of the grant, and looks to extrinsic evidence.
¶53 The Court then uses that evidence to create its own version of a road story, asserting that “[t]he undisputed extrinsic evidence demonstrated that Roger and Watson could not access their property *178 in Section 34 without traveling across all of the Dundases’ remaining lands, including Section 22 and Section 27.” See ¶ 29. Of course, “all of the Dundases’ remaining lands” include not only Section 22 and Section 27, but Section 15, Section 23, Section 26, part of Section 34 and Section 35 as well. Thus, the Court’s focus on the recitals has led it to conclude that the easement somehow granted a circuitous access route over some seven sections of Dundases’ property, finally ending in Watson’s land in Section 34. That is a long way home. I submit that the Court’s rationale well matches this route.
¶54 I would apply the clear instruction provided by § 70-1-515, MCA, and affirm the District Court on that issue. I concur with the Court’s remaining holdings.
CHIEF JUSTICE GRAY and JUSTICE NELSON join the dissent of JUSTICE RICE.
*179 [[Image here]]